**Below is a Memorandum Decision of the Court.**



**Paul B. Snyder**
**U.S. Bankruptcy Court Judge**
(Dated as of Entered on Docket date above)

# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF WASHINGTON AT TACOMA

| | |
|---|---|
| In re: | **Case No. 12-45274** |
| **JAN W. SCHMALENBERG and BARBARA A. SCHMALENBERG,** | **MEMORANDUM DECISION** |
| Debtors. | |

This matter came before the Court on August 13, 2015, on an objection filed by Jan and Barbara Schmalenberg (Debtors) to set-off, recoup, or to equitably disallow claim No. 12 of Westside Community Bank (Objection). Claim No. 12 is currently held by Sunwest Bank (Sunwest). The parties agreed to waive any procedural defects resulting from a failure, if any, to file an adversary proceeding requesting equitable relief. See Fed. R. Bankr. P. 7001(7). Taking into consideration the pleadings, declarations and arguments of counsel, the Court's findings of fact and conclusions of law are as follows:

The material facts of this case are not in dispute. Jan Schmalenberg (Debtor) is one of the founders of Westside Community Bank (Westside Bank). He was on the board of directors of both Westside Bank and its holding company, Westside Banking Company (Holding Company). According to the declaration of the Debtor, Westside Bank began experiencing liquidity problems, and sought additional financing from Columbia Bank. In 2008, Columbia Bank made a $2,000,000 loan to the Holding Company. The purpose of the loan was to provide capital for Westside Bank. The initial monthly payment on that loan was approximately

MEMORANDUM DECISION - 1

$8,000, which was paid by Westside Bank through dividends it distributed to the Holding Company, which were then paid to Columbia Bank on the loan.

In the summer of 2010, the payments on the Columbia Bank loan increased from $8,000 to approximately $64,000 per month. Westside Bank made the first of three $64,000 monthly payments. Thereafter, Westside Bank was not financially able to continue with monthly payments of that amount. In order to assist in obtaining an extension of the loan and to lower the monthly payments to $17,000 from $64,000, the Debtors agreed to personally provide additional security to Columbia Bank.

As part of the Columbia Bank loan modification, the Debtors agreed to provide a $500,000 Limited Guaranty of the Columbia Bank's $2,000,000 loan to the Holding Company. On November 24, 2010, their residence located on Long Lake in Lacey, Washington (Long Lake Property) was refinanced by Columbia Bank with a $375,000 loan that was intended by the parties to be in first lien position after the several transactions described below were completed. Initially, a portion of the Columbia Bank loan proceeds were used to pay off the existing $142,000 loan and deed of trust held by Chase Bank that was in senior position on the Long Lake Property. Additional proceeds from the Columbia Bank loan were then used to pay $93,000 on the existing $193,000 loan in second position on the Long Lake Property held by Westside Bank. Though not paid in full, Westside Bank nonetheless agreed to release its existing second deed of trust on the Long Lake Property so that the remaining $100,000 balance owed to Westside Bank became an unsecured debt. Columbia Bank subsequently recorded a deed of trust on the Long Lake Property to secure the Debtors' $500,000 guaranty, which became the new second lien deed of trust. Columbia Bank, as previously stated, also had a $375,000 first lien, due to the release both of the Chase Bank first deed of trust and Westside Bank's second deed of trust.

MEMORANDUM DECISION - 2

**Below is a Memorandum Decision of the Court.**

According to the Debtor's declaration, after making the $17,000 monthly payments to Columbia Bank for approximately one year, Westside Bank and the Holding Company boards voted to discontinue making the dividends and corresponding payments to Columbia Bank. This occurred during a board meeting at which the Debtor alleges he was absent and was effective October 31, 2011. No further payments were made and the loan went in default. This resulted in Columbia Bank calling the Debtors' $500,000 Limited Guaranty of that loan due.

The Debtors filed for bankruptcy under Title 11, Chapter 11[1] on July 30, 2012. The Debtors' bankruptcy Schedule B-Personal Property lists no claim of setoff, recoupment, or other equitable claim against Westside Bank. On December 31, 2012, Westside Bank filed a proof of claim against the Debtors for $1,028,124.33, with $836,412.34 designated as secured and $191,711.99 as unsecured. On January 11, 2013, Westside Bank was closed by the Washington State Department of Financial Institutions and the Federal Deposit Insurance Corporation (FDIC) was named as receiver. Sunwest is a successor in interest to the FDIC as receiver and is the holder of Claim No. 12, which was filed by Westside Bank.

An Order Confirming Second Amended Chapter 11 Plan (Plan) Dated August 26, 2013, (Confirmation Order) was entered on September 29, 2014. The Plan addresses allowed general unsecured claims as Class VI. The Plan identifies the unsecured claims of Westside Bank and provides: "The claim to Westside (Sunwest) may be subject to setoff as a result of a $500,000 personal guarantee the Debtors made to Columbia Bank on behalf of Westside Bank." Plan 11:3-6, ECF No. 319. The Plan also provides that Class VI, general unsecured claims, shall be paid 100% of the claim amount, plus interest, within 24 months of the confirmation. Westside Bank's secured claims are addressed as Class II, and are identified on Exhibit A to the Plan as Class II-I, Class II-L, and Class II-M (Class II Secured Claims). The Debtor's Second Amended Disclosure Statement for Plan of Reorganization under Chapter 11

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

MEMORANDUM DECISION - 3

of the Bankruptcy Code Dated: August 26, 2013 (Disclosure Statement) contains essentially the same language as the Plan.

The Plan defines a Disputed Claim as a filed or secured claim of an alleged creditor that was listed in the Debtors' Schedules as "disputed." Plan 3:9-10, ECF No. 319. Westside Bank's claim was not designated in the Debtors' Schedules as "disputed." The Plan also provides that rights, claims or causes of action whether equitable or legal are reserved. Plan 14:20-23, ECF No. 319. The Plan continues and provides, however, that the "Debtor has not identified any claims or causes of action under this section." Plan 14:24, ECF No. 319. The Plan further requires that any objection to claims must be filed and served within sixty (60) days of the date of confirmation. Plan 12:12-14, ECF No. 319; <u>see</u> <u>also</u> Local Rules W.D. Wash. Bankr. 3007-1(a). The date of the Confirmation Order was September 29, 2014; accordingly, more than sixty (60) days have lapsed. Further, the Confirmation Order specifically addresses the unsecured obligations to Sunwest under Class VI and provides:

> Debtors are asserting an offset due to their relationship with Columbia Bank. Sunwest Bank disputes the right of offset. The parties will cooperate with discovery, including an accounting and documentation as to the Columbia Bank loan and payment. The matter will be subject to an evidentiary hearing or adversary action to address said right of offset.

Confirmation Order 7:18-23, ECF No. 446.

On November 19, 2014, the Debtors filed their Application for Final Decree and Order Closing Case (Application). The Application was supported by a declaration of the Debtors' attorney, Noel P. Shillito. The Shillito declaration provides:

> The only remaining unresolved issue is the approximate amount of $191,712 as an unsecured claim of Westside Bank (now Columbia Bank) and the Debtors' claim of a setoff as result of a $500,000 personal guarantee the Debtors made to Columbia Bank on behalf of Westside Bank. This matter will be heard (if not resolved) by this Bankruptcy Court.

Shillito Decl. 2:2-5, ECF No. 465. There is no mention of claims against the Class II Secured Claims or the other causes of action alleged in the Debtors' Objection.

MEMORANDUM DECISION - 4

In summary, in the Debtors' Schedules, Plan, Disclosure Statement, Confirmation Order and the Shillito declaration in support of the Final Decree, there is no indication that the Sunwest secured debt is disputed or unresolved. The only dispute these pleadings indicate remaining is a possible claim of setoff against the unsecured portion of Sunwest's debt. There is also no mention of recoupment, equitable disallowance, piercing the corporate veil, or a third party beneficiary claim against Sunwest.

At the August 13, 2015 hearing the Debtors first asserted that "setoff" as that term is used in the Plan is broader than the term "offset" as used in the Order of Confirmation. The Debtors, however, used the terms "setoff" and "offset" interchangeably and never made a distinction between these two terms in arguments or their pleadings previously filed with this Court. Not only do many court decisions recognize that the terms are the same, but § 553 of the Bankruptcy Code refers to the terms interchangeably as well. See Newbery Corp. v. Fireman's Fund Ins. Co. (In re Newbery Corp.), 95 F.3d 1392, 1398 (9th Cir. 1996); compare also § 553(a) with § 553(b)(1). The Court therefore concludes that the Debtors have not established that the terms are not equivalent and shall hereinafter use only the term "setoff" under § 553 when addressing the remaining issues.

Sunwest argues that any right of setoff the Debtors may have possessed against its secured debt is now barred by res judicata. It is well settled that a confirmation order is a binding, final order to be accorded full res judicata effect and precludes the raising of issues which could or should have been raised during the pendency of a case, such as a typical lender liability cause of action. See In re Heritage Hotel Ltd. P'ship I, 160 B.R. 374, 377 (9th Cir. BAP 1993), aff'd, 59 F.3d 175 (9th Cir. 1995). Further, the reservation of claims in a plan of reorganization in accordance with § 1123(b)(3)(B) must be clear, in that it should be "specific and unequivocal" in order to preserve claims for the estate. See In re SI Restructuring Inc., 714 F.3d 860, 864 (5th Cir. 2013).

MEMORANDUM DECISION - 5

**Below is a Memorandum Decision of the Court.**

The Debtors' Schedules, Plan, Disclosure Statement, Confirmation Order and the declaration in support of the Final Decree all appear to provide <u>only</u> for a reservation of rights or retention of jurisdiction to pursue a claim for setoff against the <u>unsecured</u> obligations owed Sunwest. All of the facts complained of by the Debtors occurred prior to the filing of the Debtors' Chapter 11 petition in bankruptcy. As late as the declaration in support of the Debtors' Application, the only remaining unresolved issue asserted by the Debtors was the previously alleged setoff against Sunwest's unsecured claim. In accordance with the case law cited above, the Court concludes that the Confirmation Order is a final order which is res judicata and bars the Debtors' assertions for setoff and any additional claims against Sunwest's secured claim.

Assuming arguendo that the elements of res judicata have not been met, the Ninth Circuit Court of Appeals (Ninth Circuit) has also ruled that a party is equitably estopped from asserting a cause of action not raised in a reorganization plan or the debtor's schedules or disclosure statement. <u>Hay v. First Interstate Bank of Kalispell, N.A. (In re Desert Mountain Forest Prods., Inc.)</u>, 978 F.2d 555, 557 (9th Cir. 1992). This holding stems from decisions in which the courts conclude that § 1125 requires the disclosure of adequate information in order to allow a claimant to make an informed decision on how to vote on a plan. <u>See, e.g.</u>, <u>In re Paramount Plastics, Inc.</u>, 172 B.R. 331, 334 (Bankr. W.D. Wash. 1994).

It appears from the declarations of the Debtor, Mr. Schmalenberg, that he was aware of the facts surrounding a potential claim against Westside Bank (now Sunwest) prior to Plan confirmation. Further, the only declaration in the Court's record that speaks to the negotiations that took place concerning confirmation of the Debtors' Plan is that by Peter Lofgren, Vice President of Sunwest Bank. He states in his declaration that there was no indication that the Debtors disputed their secured claim at the time of the settlement of Sunwest's several filed objections to the Debtors' Plan confirmation. Lofgren Decl. 3:22-26, ECF No. 491. The

MEMORANDUM DECISION - 6

negotiations were said to take place over several months and ultimately the Debtors and Sunwest came to a consensual agreement as to the treatment of Sunwest's claim in the Debtors' Plan. The language of the Plan itself requires that any objections must be served within 60 days of confirmation. The burden of proof lies with the Debtors, but the only record before the Court is that the Plan was a product of a settlement with Sunwest.

Sunwest has thus met all four factors required for the defense of equitable estoppel. See United States v. Ruby Co., 588 F.2d 697, 703 (9th Cir. 1978). The Debtors were aware of the salient facts and that Sunwest intended to settle all of its claims, except setoff of the unsecured claim, prior to confirmation. Sunwest was unaware that the Debtors intended to pursue claims in addition to the claim for setoff of their unsecured debt. Sunwest therefore acted to its detriment in negotiating a settlement of its objections in order to allow confirmation of the Debtors' Plan. Since the Debtors were aware of sufficient facts to require notification of the existence of all of their claims and causes of action against Sunwest prior to Plan confirmation, and most certainly before the Application was filed, they are equitably estopped from now asserting additional claims. For the same reasons, the Debtors' claims for recoupment, equitable disallowance and third party beneficiary are also barred. These last two claims were asserted by the Debtors in their Objection, but not pursued at oral argument, nor was any evidence provided in support.

The Debtors attempt to argue that recoupment should not be barred by res judicata or equitable estoppel by distinguishing it from setoff. Although the terms "setoff" and "recoupment" are also often referred to interchangeably, unlike offset and setoff, the Court agrees that these terms have separate meanings. "Setoff" refers to the adjustment of mutual debts that arise out of separate transactions, while "recoupment" is the netting of debts arising from a single transaction. Harmon v. Oregon (In re Harmon), 188 B.R. 421, 425 (9th Cir. BAP 1995).

MEMORANDUM DECISION - 7

The Court acknowledges that the distinctions between these two terms does provide some support for the Debtors' argument. For instance, case law exists indicating that one of the distinctions between setoff and recoupment is that recoupment is not a separate claim or cause of action, but a limited equitable defense that does not constitute a "claim" under § 101(5). <u>Harmon</u>, 188 B.R. at 425. Accordingly, the argument would be that since the Debtors' Schedules, Disclosure Statement and Plan only dealt with limiting "claims" against the unsecured portion of the Sunwest debt, these documents do not preclude the equitable defense of recoupment. For the same reasons set forth above, the Court concludes that this argument has no merit. The only objection to Sunwest's claim reserved by the Debtors' Schedules, Plan, Disclosure Statement, Confirmation Order and the declaration in support of the Final Decree, is a claim for setoff against the unsecured portion of the Sunwest debt. Further, the only evidence submitted is the declaration of Lofgren indicating that Sunwest's objections to confirmation were stricken as a result of a compromise its claim. As with the Debtors' Objection for setoff against Sunwest's secured claim, the Debtors are now equitably estopped to raise defenses such as recoupment that should have been previously raised in negotiations over the confirmation of the Plan.

Even if the Court is incorrect, however, and recoupment is not barred, the Debtors' objection to Sunwest's claim fails. The same is true of the Debtors' setoff objection to the unsecured portion of Sunwest's claim. The recoupment and setoff challenges to the unsecured portion of Sunwest's claim, even if not barred by res judicata or equitable estoppel, fail because the Debtors are unable to establish mutuality of contracting parties.

Although often thought to be less restrictive than the requirements for setoff, both recoupment and setoff require the existence of mutual obligations between a debtor and a creditor. <u>Newbery</u>, 95 F.3d at 1398-1403. Transactions for purposes of mutuality as an

MEMORANDUM DECISION - 8

element of setoff or a single transaction by its nature for purposes of establishing recoupment, must necessarily involve the same contracting parties.

The facts of this case, however, involve different debts owed to different creditors. The Debtors are requesting to both setoff and recoup a debt owed to Sunwest, as successor to Westside Bank, against money they assert are owed to them by the Holding Company. The attempted recoupment and setoff stem from the Debtors' guarantee of a Columbia Bank loan that benefited the Holding Company that they seek to adjust against a debt they owe to Westside Bank, the predecessor to Sunwest. As the debts on their face are with different creditors, Westside Bank and the Holding Company, the setoff claim and recoupment defense fail because the debts are not mutual. The only way for the Debtors to establish the existence of mutual debts is to pierce the corporate veil or prove that the Holding Company was the alter ego of Westside Bank.

Under Washington State law, disregarding a corporate entity and piercing the corporate veil requires two essential factors. First, the corporate form must be intentionally used to violate or evade a duty; and second, the corporate entity must be disregarded in order to prevent an unjustified loss to an innocent injured party. See Meisel v. M & N Modern Hydraulic Press, Co., 97 Wn.2d 403, 410 (1982). The first element is established by evidence of an abuse of the corporate form, typically involving "'fraud, misrepresentation, or some form of manipulation of the corporation to the stockholder's benefit and creditor's detriment.'" Meisel, 97 Wn.2d at 410 (quoting Truckweld Equip. Co. v. Olson, 26 Wn. App. 638, 645 (1980)). The second element requires a showing of wrongful corporate activities that actually harm the party seeking relief. Intentional misconduct must be the cause of the harm that will be avoided by disregarding the corporate veil. Meisel, 97 Wn.2d at 410.

To support their position that the corporate veil should be pierced or that the Holding Company is the alter ego of Westside Bank, the Debtors rely exclusively on the Schmalenberg

MEMORANDUM DECISION - 9

and Schuur declarations.  The Schuur declaration is not only brief, but conclusory and states without any supporting documentation that the Holding Company "had no discernible role other than as an administrative mechanism to transfer capital to and from the Bank from outside sources."  Schuur Decl. 1:23-24, ECF No. 493-1.  The Schmalenberg declaration is similarly conclusory.  Neither of these declarations contain sufficient evidence to establish that the corporate veil should be pierced in this case, nor do they present sufficient evidence to establish the existence of an issue of fact that would warrant an evidentiary hearing.

The Debtors further argue that the corporate veil should be pierced because the two entities commingled funds.  In support of this argument, the Debtors rely on the FDIC Claim, attached to Sunwest Bank's Response as Exhibit A (ECF No. 490-1).  The FDIC claim is signed by Mr. Schmalenberg and states only that the payments on the Columbia Bank loan were "paid by Westside Bank through dividends distributed up to Westside Banking Company." Schmalenberg Decl. Ex. A 3, ECF No. 490-1.  The mere payment of dividends, however, does not establish a commingling of funds or a sufficient disregard of the corporate form.  The attachments to the Debtors' Objection simply track the transactions between the various parties.  These declarations and attachments do not establish, by themselves, evidence of fraud or manipulation to the benefit of shareholders.

Further, to rely on commingling of funds to pierce a corporate veil requires a finding that the two entities' property rights are so commingled and their affairs so intimately related in management as to render it apparent that they are one and the same.  The burden is on the Debtors to establish that they are so closely related that it would work a fraud upon third persons to not consider them as one.  H. E. Briggs & Co. v. Harper Clay Prods. Co., 150 Wash. 235, 240 (1928).  The Debtors have not presented evidence of any commingling, manipulation or fraud so as to work a fraud on third parties.

MEMORANDUM DECISION - 10

Nor do the Schmalenberg and the Schuur declarations contain allegations of wrongful corporate conduct.  The Schmalenberg declaration indicates that the Holding Company was formed to allow its wholly owned subsidiary, Westside Bank, to expand services, open new branches, access low interest sources of financing, and inject money for recapitalization.  These appear to be legitimate business reasons to have separate and distinct corporate entities.  Beyond these allegations, there is no other assertion that supports a finding that piercing the corporate veil is appropriate or to conclude that one company is the alter ego of the other.  As there is no evidence of wrongful corporate activities by either company the Debtors have not met their burden of proof necessary to pierce the corporate veil.

Westside Bank and the Holding Company are two separate entities.  The Debtors are therefore unable to establish an essential element of either the setoff claim or recoupment.  The debts at issue are not mutual as the contracting parties are different.  Thus, even if recoupment and setoff against the unsecured portion of the debt owed to Sunwest are not barred by res judicata or equitable estoppel, the Debtors are unable to object to Sunwest's claim on either of these grounds.

In summary, the Court concludes that the Debtors have not met their burden of proof in establishing that they are entitled to setoff, recoup or equitably disallow the secured or unsecured portion of Sunwest's claim for the reasons set forth above.  The Debtors' objection is denied.

///End of Memorandum Decision///

MEMORANDUM DECISION - 11