Entered on Docket January 27, 2016

**Below is a Memorandum Decision of the Court.**



_____
**Paul B. Snyder**
**U.S. Bankruptcy Court Judge**
**(Dated as of Entered on Docket date above)**

_____

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF WASHINGTON AT TACOMA**

In re:

JAN W. SCHMALENBERG and BARBARA A. SCHMALENBERG,

                  Debtors.

**Case No. 12-45274**

**MEMORANDUM DECISION ON DEBTORS' DISPOSITIVE MOTION TO SET OFF CLAIM NO. 12**

**NOT FOR PUBLICATION**

This matter is before the Court on the dispositive motion of Jan and Barbara Schmalenberg (Debtors). On July 22, 2015, the Debtors filed Debtors' _Corrected_ Motion to Set-Off, Recoup, or Equitably Disallow Claim No. 12 (Corrected Motion). On September 17, 2015, the Court entered a Memorandum Decision (Memorandum Decision), adjudicating the Debtors' objection to Claim No. 12 (Objection) of Westside Community Bank (Westside Bank), which is now held by Sunwest Bank (Sunwest). On December 10, 2015, the Court granted the Debtors' motion for reconsideration of the Memorandum Decision. The primary basis for this ruling was to ensure that the Debtors had the requisite notice that their Corrected Motion would be considered dispositive. See Reliance Steel & Aluminum Co. v. Locklin (In re Locklin), BAP No. CC-14-1446, Bk. No. 13-24951, 2015 WL 8267995, at *7 (9th Cir. BAP Dec. 7, 2015); Norse v. City of Santa Cruz, 629 F.3d 966, 971-72 (9th Cir. 2010).

MEMORANDUM DECISION ON
DEBTORS' DISPOSITIVE MOTION
TO SET OFF CLAIM NO. 12 - 1

**Below is a Memorandum Decision of the Court.**

1  In accordance with the Court's ruling, the Debtors filed Debtors' Motion for Setoff Dispute to Be Heard as Evidentiary Hearing (Motion) and supporting evidence on January 6, 2016. Sunwest filed Sunwest Bank's Supplemental Memorandum in Opposition to Debtors' *Corrected* Motion to Set-off, Recoup, or Equitably Disallow Claim No. 12 (Response) and supporting exhibits on January 11, 2016. The Court conducted a hearing on the Debtors' dispositive motion on January 15, 2016, and took the matter under advisement. The Court has considered the parties' most recently filed pleadings as well as those filed prior to the Memorandum Decision and incorporates by reference its Memorandum Decision filed on September 17, 2015 (ECF No. 499) and oral decision granting reconsideration given in open court on December 10, 2015. The Court has also reluctantly considered the unsolicited supplemental declarations of Mr. Schmalenberg (Debtor) and his counsel, filed on the eve of the oral decision that was set for January 26, 2016.

As an initial matter, the Debtors contend the Court applied the wrong legal standard in its Memorandum Decision. In Washington State, although the law is not entirely clear, there appear to be two separate alternatives to disregard the corporate form. The first method, which for simplicity sake the parties and Court have referred to as piercing the corporate veil, is through the two-part test set forth in Meisel v. M & N Modern Hydraulic Press Co., 97 Wn.2d 403, 410 (1982): First, the corporate form must be intentionally used to violate or evade a duty; and second, it must be necessary and required to disregard the corporate entity in order to prevent an unjustified loss to an innocent injured party. The Debtors do not assign error to this standard set forth in the Court's Memorandum Decision. At the January 15 hearing, the Debtors acknowledged that they are no longer pursuing this argument. Accordingly, the Court stands on its analysis and determination of this theory in its Memorandum Decision.

MEMORANDUM DECISION ON
DEBTORS' DISPOSITIVE MOTION
TO SET OFF CLAIM NO. 12 - 2

**Below is a Memorandum Decision of the Court.**

The second method to disregard the corporate form is through an alter ego theory. The Debtors argue that the Court in its Memorandum Decision incorrectly required wrong-doing for this standard. Relying on Standard Fire Ins. Co. v. Blakeslee, 54 Wn. App. 1, 7 (1989), the Debtors contend that the standard is merely whether the subsidiary was "dominated and controlled" by the parent. This standard proposed by the Debtor, however, is an over-simplification of the test employed by Washington courts, which admittedly has at times been blurred with the Meisel test.

"Where a private person so dominates and controls a corporation that such corporation is his *alter ego*, a court is justified in piercing the veil of corporate entity and holding that the corporation and private person are one and the same." Standard Fire, 54 Wn. App. at 5 (quoting Pohlman Inv. Co. v. Va. City Gold Mining Co., 184 Wash. 273, 283 (1935)). As further articulated by the Washington State Supreme Court, however, more than just control is required: "[T]here must be such a commingling of property rights or interests as to render it apparent that they are intended to function as one, and further, to regard them as separate would aid the consummation of a fraud or wrong upon others." J. I. Case Credit Corp. v. Stark, 64 Wn.2d 470, 475 (1964); Norhawk Invs., Inc. v. Subway Sandwich Shops, Inc., 61 Wn. App. 395, 401 (1991) (citing Stark, 64 Wn.2d at 475).

Indeed, the Washington State Supreme Court found the following facts to be "insufficient in themselves to enable a court to declare two corporations to be identical in responsibility:"

> Credit is a wholly-owned subsidiary of Case; the secretary-treasurer of Case is president of Credit; all employees of Credit are paid by Case; the credit manager of Credit is also an employee of Case; both companies have the same address, the same lawyers, the same nonresident agent, and the same auditors; Credit is in business only to handle retail financing for Case.

Stark, 64 Wn.2d at 475. Rather, two elements must be proved: (1) that there is such a commingling of property rights or interests as to render it apparent that the corporations are

MEMORANDUM DECISION ON
DEBTORS' DISPOSITIVE MOTION
TO SET OFF CLAIM NO. 12 - 3

**Below is a Memorandum Decision of the Court.**

intended to function as one, and (2) to regard them as separate entities would aid the consummation of a fraud or wrong upon others. Stark, 64 Wn.2d at 475; see also, Thomas V. Harris, Washington's Doctrine of Corporate Disregard, 56 Wash. L. Rev. 253, 258 (1981). This two-part requirement is consistent with the law review article cited by the Debtors in their motion and during oral argument, which in complete pertinent part provides: "In parent and subsidiary corporation cases, a most important field for invoking the doctrine, there must be more than mere stockholder control of the entity sought to be disregarded. **There must be what may be best denoted as Manipulation.**" Charles Horowitz, Disregarding the Entity of Private Corporations, 14 Wash. L. Rev. 285, 292 (1939) (emphasis added). Accordingly, the Court set forth the proper standard in its Memorandum Decision.

The Debtors argue they have provided sufficient evidence to raise an issue of material fact regarding the alter ego doctrine, so as to necessitate the holding of an evidentiary hearing. In applying an alter ego doctrine, the Washington State Supreme Court has considered whether "corporate records or formalities" were kept and whether there was any indication of "an overt intention . . . to disregard the corporate entity." Grayson v. Nordic Constr. Co., 92 Wn.2d 548, 553 (1979).

According to uncontroverted evidence presented by Sunwest, as of December 2012, approximately 80% of commercial banks in the United States were part of a bank holding company structure. Board of Governors of the Federal Reserve System, Bank Holding Companies, (January 25, 2016, 11:52 AM), https://www.fedpartnership.gov/bank-life-cycle/manage-transition/bank-holding-companies. The Federal Reserve supervises all bank holding companies. One of the identified benefits of forming a bank holding company is the ability to raise capital to fund a capital injection to the subsidiary bank.

The parties do not dispute the general structure and relationship of a holding company and bank, or its existence in this case. Westside Banking Company (Holding Company) was

MEMORANDUM DECISION ON
DEBTORS' DISPOSITIVE MOTION
TO SET OFF CLAIM NO. 12 - 4

formed to allow Westside Bank to: (1) expand its services and open new branches; (2) access low-interest sources of financing; and (3) inject money for re-capitalization. The uncontested declaration of the Debtor provides that its formation was required by the FDIC and tax regulations in order to provide growth opportunities. In furtherance of this purpose, in 2008, the Holding Company procured a $2 million loan from Columbia Bank in order to inject capital into Westside Bank. Thereafter, Westside Bank distributed dividends to the Holding Company, which the Holding Company used to make payments on the Columbia Bank loan.

The Debtors' primary argument to establish the alter ego theory is "excessive dividending," which the Debtors have failed to concretely define. The entirety of their undisputed evidence in support of this argument is that each time a payment on the Columbia Bank loan came due, the Holding Company compelled Westside Bank to distribute a dividend to it in an amount sufficient to cover the monthly loan payment, which varied from as low as $8,000 to as high as $64,000. They contend this nature of dividending amounted to the Holding Company using Westside Bank as its personal ATM. They argue that this is in contrast to proper dividends, which are carefully and periodically made in a bank's best interest and not reactive to the needs of a holding company.

The Debtors, however, do not allege or provide evidence of <u>excessive</u> dividends. Nor do they allege or provide evidence that the dividends were used for anything other than the repayment of the Columbia Bank loan. Additionally, the Debtors acknowledged at the January 15 hearing that their assertion of weekly phone calls from the Holding Company to Westside Bank for more money was not supported by any evidence. Finally, the Debtors have provided no caselaw finding that distributing dividends in this manner, alone, renders a holding company the alter ego of a bank or vice versa.

The Debtors next contend that "excessive dividending" when considered with the following additional undisputed facts raises an issue of material fact as to control and

MEMORANDUM DECISION ON
DEBTORS' DISPOSITIVE MOTION
TO SET OFF CLAIM NO. 12 - 5

**Below is a Memorandum Decision of the Court.**

domination: (1) the Holding Company held all shares of stock of Westside Bank, and members of the boards for the two entities served on both boards; (2) at least one board member treated the two entities as one and the same; (3) the board meetings for both entities occurred back-to-back; (4) the Holding Company did not have its own assets, employees, or office space; and (5) Westside Bank covered the Holding Company's expenses. These facts, however, exclude other uncontested facts including, but not limited to, that the Holding Company's expenses were almost exclusively related to the servicing of the Columbia Bank loan debt, and the board meetings, while held back-to-back, were conducted separately. It is uncontested that the Holding Company and Westside Bank kept their own corporate formalities. Notably, there also is no evidence of any overt intention to disregard the corporate entity, or that third parties such as Columbia Bank were not aware that the corporations were separate entities.

Considering the evidence in the record in the light most favorable to the Debtors, the Court finds that the Debtors have failed to raise an issue of material fact regarding the control and domination of Westside Bank by the Holding Company necessitating an evidentiary hearing.

Assuming arguendo that the Debtors raised an issue of fact as to control, the Debtors have not raised an issue of material fact regarding the additional requirement that failure to declare the corporations alter egos would aid in the consummation of a fraud, manipulation, or wrong upon others. See Stark, 64 Wn.2d at 475. The "other" in this case is the Debtor, who is the sole party claiming an injury. Unlike an innocent third party as in Standard Fire, cited by the Debtors, the Debtor was not only a founder of Westside Bank, but was on the board of directors for both Westside Bank and the Holding Company during the entire time period at issue. There is no evidence that the Debtor was unaware of the separate corporate structure of these two entities, their financial relationship, or the nature of the transactions between them and with third parties.

MEMORANDUM DECISION ON
DEBTORS' DISPOSITIVE MOTION
TO SET OFF CLAIM NO. 12 - 6

Case 12-45274-PBS    Doc 536    Filed 01/27/16    Ent. 01/27/16 11:46:43    Pg. 6 of 8

Furthermore, it is undisputed that the Debtor, while a self-described dissident member, was an active board member for both Westside Bank and the Holding Company when Columbia Bank made the $2 million loan to the Holding Company in order to inject capital into Westside Bank. The Debtors also participated in restructuring their personal debt with Westside Bank and Columbia Bank in 2010, and in granting the guaranty to Columbia Bank for the loan made to the Holding Company. There is nothing in the record indicating that the Debtors at any time believed the loan they were guaranteeing was made to Westside Bank. These facts are not altered even when considering that the Debtor was allegedly excluded from the board meeting at which the board voted to stop making payments on the Columbia Bank loan.

Finally, the Debtors do not dispute that Westside Bank distributed dividends to the Holding Company for the purpose of paying Columbia Bank. These dividends, rather than injuring the Debtors, benefitted them by permitting repayment of the Columbia Bank loan, which they had guaranteed. At the January 15 hearing, the Debtors acknowledged that but for the dividends, the Debtors' guaranty to Columbia Bank likely would have been called much earlier.

Based on the undisputed evidence before the Court, the Debtors were knowledgeable and sophisticated parties to the financial transactions that occurred among Westside Bank, the Holding Company, Columbia Bank and themselves. The Debtors have failed to present any caselaw indicating a person in a position similar to the Debtors' is the intended beneficiary of the alter ego doctrine, despite it being asserted in Sunwest Bank's Response and argued at the January 15, 2016 hearing. Considering that the Debtors were parties to the financial arrangements of which they now complain, and that they benefitted financially therefrom, the Debtors have also failed to raise an issue of material fact regarding the requirement that there

MEMORANDUM DECISION ON
DEBTORS' DISPOSITIVE MOTION
TO SET OFF CLAIM NO. 12 - 7

**Below is a Memorandum Decision of the Court.**

be a "species of fraud, bad faith or other wrong" that must be obviated by this Court by disregarding the corporate forms of Westside Bank and the Holding Company.

Accordingly, the Debtors have not met their burden of proof as to either requirement necessary for the Court to impose the alter ego doctrine, as set forth by the Washington State Supreme Court in <u>Stark</u>, for the purpose of establishing mutuality as an essential element of setoff. Consistent with the Court's Memorandum Decision, the Debtors' Objection is denied

///End of Memorandum Decision///

MEMORANDUM DECISION ON
DEBTORS' DISPOSITIVE MOTION
TO SET OFF CLAIM NO. 12 - 8